# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOM SCHMIDT,<br>   Plaintiff,<br><br>   v.<br><br>SHERRI ANND BALDY, et al.,<br>   Defendants.<br><br>And Related Claims. | CV 16-9368-DSF (AGRx)<br><br>Findings of Fact and Conclusions of Law re Sherri Annd Baldy's Counterclaims Against Tom Schmidt |

## INTRODUCTION

This action involves a dispute between Counterclaim Plaintiff Sherri Baldy and Counterclaim Defendant Tom Schmidt. On April 26, 2017, Baldy filed counterclaims against Schmidt for copyright infringement, vicarious and contributory copyright infringement, recovery under the Digital Millennium Copyright Act, and violation of California Bus. & Prof. Code § 17200 et seq. Dkt. 19 (Counterclaim Compl. (Compl.)). This action was tried before the Court on March 26, 2019. Schmidt did not appear.

Having heard and reviewed the evidence, the Court makes the following findings of fact and conclusions of law.[1]

---

[1] Any finding of fact deemed to be a conclusion of law is incorporated into the conclusions of law. Any conclusion of law deemed to be a finding of fact is incorporated into the findings of fact.

# FINDINGS OF FACT

1. This Court has subject matter jurisdiction pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.* 28 U.S.C § 1331.[2] The Court has supplemental jurisdiction over the state-law claims. 28 U.S.C. § 1367. Venue is proper under 28 U.S.C. § 1391.

2. Baldy has been an artist for more than 20 years, and in the crafting industry for about 10 years. She specializes in big eyed, big head dolls under the brand name Mybesties. She licensed her line of big eyed art dolls all over the world, including to the Bradford Exchange and Disney. She sells her products directly to consumers and through retailers like JOANNE Fabrics, Walmart, and Target. Dkt. 144 (Tr.) at 7:1-9:7.

3. Schmidt is an owner of Lacy Sunshine Stamps (Lacy Sunshine), a scrapbooking retailer. Dkt. 1 (Compl.) ¶ 8.[3]

4. Baldy and Schmidt were introduced by Heather Valentin, an artist who licensed her work to Baldy between 2010 and 2012. Tr. at 11:3-13:7.

5. In or around November 2012, Schmidt emailed Baldy informing her that Schmidt was going to be Valentin's business manager and requesting an accounting of

---

[2] In its June 11, 2019 Order, Dkt. 153, the Court set out its reasoning as to why the recent Supreme Court decision <u>Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC</u>, 139 S. Ct. 881 (2019) does not deprive the Court of subject matter jurisdiction over this case.

[3] "Factual assertions in pleadings . . . are considered judicial admissions conclusively binding on the party who made them." <u>Am. Title Ins. Co. v. Lacelaw Corp.</u>, 861 F.2d 224, 226 (9th Cir. 1988).

Valentin's royalties for the prior two years. Schmidt stated that if the royalty report was not provided within 48 hours, Valentin would terminate her contract with Baldy. Baldy did not comply and Valentin terminated her contract within a week. Tr. at 13:8-14:10.

6. At some point thereafter, Schmidt and Valentin established "Lacy Sunshine." Tr. at 14:11-15, 22:8-10.

**A. Works and Copyrights**

7. Baldy created the following list of original works:

    a. Daisy Do All, first created and published on December 31, 2012 on Baldy's Facebook page, Tr. at 17:10-18:12, 18:20-19:13, Ex. 2

    b. Wild Child Fishing Girl, first published on March 25, 2013, Tr. at 32:12-32:25, Ex. 7;

    c. Wild Child, first published on June 12, 2013 on Baldy's Facebook page, Tr. at 29:2-20, 30:4-31:25;

    d. Wild Child Little Violet, Tr. at 28:21-29:15;

    e. Wild Child Betsy Beanie and Flossie (Betsy), first published on November 9, 2013 on Baldy's Facebook page, Tr. at 34:17-35:15, Ex. 10;

8. Baldy's Facebook pages are available to the public, and have been available to the public since the first image was published. Tr. at 19:14-20:10, 31:2-7, 35:16-18.

9. Baldy applied for copyright registration on April 26, 2017 and obtained copyright registrations for the following

characters, among others: Daisy Do All,[4] Fishing Girl, Betsy, Wild Child. See Tr. at 32:1-3, 33:1-34:8, 40:2-7, 45:21-46:2 Exs. 3, 8, 9, 13.

10. Schmidt claims exclusive rights over the two drawings in the left column of Exhibit A to his complaint. Compl. ¶ 8 & Ex. A. The first drawing was published on Lacy Sunshine on or around 2014, as part of a line called Mayde Dust Bunnies. Tr. at 21:9-23:25, 24:12-25:1, Ex. 4. The second drawing, is part of the Rory line. There was no evidence that this particular drawing was published prior to the filing of the complaint, but other versions of Rory were published in 2013 on Valentin's blog. Tr. at 28:18-20, 36:2-38:3, 43:16-45:2, Ex. 11.

11. Lacy Sunshine continues to sell Mayde and Rory images. Tr. at 46:8-47:2, Ex. 14.

B. **Unfair Competition**

12. Baldy submitted evidence that if a customer were to search Amazon or Google for "Sherri Baldy," Valentin's works would appear in the search result. Because of this, some customers purchased Valentin art instead of Baldy art. Tr. at 25:10-28:10.

## CONCLUSIONS OF LAW

A. **Burden of Proof**

13. Baldy was required to establish, by a preponderance of the evidence, every element of her claims for copyright infringement, vicarious and contributory copyright

---

[4] The Court notes that this copyright does not appear in Exhibit B to Baldy's Counterclaim. Dkt. 19-2. However, allegations as to this work were set forth in the Counterclaim. Dkt. 19 ¶ 13.

4

infringement, recovery under the Digital Millennium Copyright Act, and unfair competition. See In re Exxon Valdez, 270 F.3d 1215, 1232 (9th Cir. 2001) ("The standard of proof generally applied in federal civil cases is preponderance of evidence").

## B. Copyright Infringement

14. "A plaintiff bringing a claim for copyright infringement must demonstrate '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" Funky Films, Inc. v. Time Warner Entm't, 462 F.3d 1072, 1076 (9th Cir. 2006) (quoting Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)). "[T]he second element has two distinct components: 'copying' and 'unlawful appropriation.'" Rentmeester v. Nike, Inc., 883 F.3d 1111, 1117 (9th Cir. 2018), cert. denied, 139 S. Ct. 1375 (2019).

    ### 1. Copyright Ownership

15. "An author gains 'exclusive rights' in her work immediately upon the work's creation, including rights of reproduction, distribution, and display." Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC, 139 S. Ct. 881, 887 (2019). "Before pursuing an infringement claim in court, however, a copyright claimant generally must comply with § 411(a)'s requirement that 'registration of the copyright claim has been made.'" Id. (quoting 17 U.S.C.A. § 411(a)).[5] "In any

---

[5] At the time the lawsuit was filed, the law in the Ninth Circuit required only "receipt by the Copyright Office of a complete application" to "satisfy[y] the registration requirement." Cosmetic Ideas, Inc. v. IAC/Interactivecorp., 606 F.3d 612, 621 (9th Cir. 2010). However, a few weeks before trial, the Supreme Court held in Fourth Estate that registration did not occur until "the Copyright office grants registration." 139 S. Ct. at 888. The Court found

5

judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). Here, each of the registration certificates were made within five years of Baldy's first publication. Therefore, she has established ownership of valid copyrights.

   2. **Copying**

16. There is no evidence that Schmidt himself copied Baldy's work. See Ellison v. Robertson, 357 F.3d 1072, 1076 (9th Cir. 2004) ("[A] plaintiff must show that . . . the defendant himself violated one or more of the plaintiff's exclusive rights under the Copyright Act"). The only evidence linking Schmidt to the allegedly infringing images created by Valentin is that Schmidt is "an owner" of the website where the allegedly infringing images were sold. This, without more, is insufficient to establish that Schmidt himself violated one of Baldy's rights.

17. The Court finds in favor of Schmidt and against Baldy on Baldy's counterclaim for copyright infringement.

**C. Vicarious and Contributory Copyright Infringement**

18. Copyright law "allows imposition of liability when the defendant profits directly from the infringement and has a right and ability to supervise the direct infringer, even if the defendant initially lacks knowledge of the infringement." Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545

---

that in the circumstances of this particular case, the change in law did not warrant dismissal of the copyright claims. See Dkt. 153.

U.S. 913, 930 n.9 (2005); see also Ellison, 357 F.3d at 1076 ("A defendant is vicariously liable for copyright infringement if he enjoys a direct financial benefit from *another's* infringing activity and 'has the right and ability to supervise' the infringing activity." (quoting A & M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1022 (9th Cir. 2001))).

19. "[O]ne contributorily infringes when he (1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement." Perfect 10, Inc. v. Giganews, Inc., 847 F.3d 657, 670 (9th Cir.) (quoting Perfect 10, Inc. v. Visa Int'l Serv. Ass'n, 494 F.3d 788, 795 (9th Cir. 2007)), cert. denied, 138 S. Ct. 504 (2017).

20. As set out in the Court's finding of facts and conclusions of law regarding Baldy's Third Party Claims against Valentin, the Court found that Valentin infringed one of Baldy's copyrights. However, Baldy submitted no evidence that Schmidt had the right and ability to supervise Valentin or the content on the Lacy Sunshine website,[6] or that he benefitted financially from the sale of the infringing works.[7] Nor did Baldy submit evidence that Schmidt had knowledge that Valentin's Mayde doll infringed Baldy's Daisy Do All doll, or that he materially contributed to or induced Valentin's infringement.

21. Even if there were evidence that Schmidt was vicariously liable, Baldy presented no evidence at trial of her actual

---

[6] Schmidt's admission that he was "an owner" of the website, without more, does not establish by a preponderance of the evidence that he had the right and ability to supervise the infringing activity.

[7] Again, that he is "an owner" does not establish by a preponderance of the evidence that he received any direct financial benefit from the sale of the infringing works.

damages[8] and is not entitled to statutory damages or attorneys' fees, 17 U.S.C. § 412 ("[N]o award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for . . . any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.").

22. The Court finds in favor of Schmidt and against Baldy on Baldy's counterclaim for vicarious and contributory copyright infringement.

**D.   Digital Millennium Copyright Act**

23. Baldy did not provide any evidence to support her claims for violation of the Digital Millennium Copyright Act.

24. The Court finds in favor of Schmidt and against Baldy on Baldy's counterclaim for violation of the Digital Millennium Copyright Act.

**E.   Unfair Competition**

25. California's unfair competition law (UCL) "does not proscribe specific practices," but rather "defines 'unfair competition' to include 'any unlawful, unfair or fraudulent business act or

---

[8] Although Baldy testified that her revenues declined from approximately $300,000 in 2012 to $90,000 in 2019, Tr. at 15:10-16:18, actual damages for copyright infringement cannot be established by showing a vague decrease in revenues over a 7-year period, not tied to any infringement. With only that information, determining the "profits lost *due to the infringement* or by the value of the use of the copyrighted work to the infringer" would be entirely speculative. Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700, 708 (9th Cir. 2004) (emphasis added) (quoting McRoberts Software, Inc. v. Media 100, Inc., 329 F.3d 557, 566 (7th Cir. 2003)).

practice.'" Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999) (quoting Cal. Bus. & Prof. Code § 17200). "Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition." Id. (quoting Podolsky v. First Healthcare Corp., 50 Cal. App. 4th 632, 647 (1996), as modified (Nov. 5, 1996), as modified (Nov. 20, 1996)).

26. "A 'violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong.'" Graham v. Bank of Am., N.A., 226 Cal. App. 4th 594, 610 (2014) (quoting Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1554 (2007)). A competitor's actions are "unfair" if their conduct "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Id. at 612 (quoting Cel-Tech, 20 Cal. 4th at 187). A business practice is fraudulent if "members of the public are 'likely to be deceived.'" Id. at 613 (quoting Buller v. Sutter Health, 160 Cal. App. 4th 981, 986 (2008)).

27. Baldy has not established by a preponderance of the evidence that Schmidt himself committed the challenged business acts. Vague assertions of what "they" did, without more, are insufficient. See, e.g., Tr. at 15:17-18 ("[T]hey went in and would meta tag my names, meta tag my business name."). Similarly, claims about Valentin cannot establish Schmidt's liability. See, e.g., Tr. at 25:20-23 ("She was meta tagging every single thing that I would do. She would meta tag my brand. She would meta tag my personal name. She would meta tag personal names of my collections.").

9

28. Further, Baldy's testimony that "[she] did screenshots of when [she] type[s] in [her] name, there were [Valentin's] books [and] [n]o other artists showed up under [her] name," and that "the meta tags came off of [her] Amazon store" after she "filed the counter lawsuit," Tr. at 28:5-10, without more, is insufficient to establish how meta-tagging works on Amazon or Google, and therefore that someone with control over the infringing artwork committed an unlawful, unfair, or fraudulent act.

## CONCLUSION

Judgment shall be entered in favor of Schmidt and against Baldy on Baldy's claims for copyright infringement, vicarious and contributory copyright infringement, recovery under the Digital Millennium Copyright Act, and unfair competition.

IT IS SO ORDERED.

Date: 10/19/2019

Dale S. Fischer
United States District Judge