# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOM SCHMIDT,<br>          Plaintiff,<br><br>          v.<br><br>SHERRI ANND BALDY, et al.,<br>          Defendants.<br><br>And Related Claims. | CV 16-9368-DSF (AGRx)<br><br><br>Findings of Fact and Conclusions of Law re Sherri Annd Baldy's Third Party Claims Against Heather Valentin |

## INTRODUCTION

This action involves a dispute between Third Party Plaintiff Sherri Baldy and Third Party Defendant Heather Valentin. On May 10, 2017, Baldy filed third party claims against Valentin for copyright infringement, vicarious and contributory copyright infringement, recovery under the Digital Millennium Copyright Act, defamation, intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, and violation of California Bus. & Prof. Code § 17200 et seq. Dkt. 26 (Third Party Compl. (Compl.)). This action was tried before the Court on May 21, 2019.[1]

---

[1] At trial, no evidence was presented as to vicarious or contributory copyright infringement, recovery under the Digital Millennium Copyright Act, or negligent interference with prospective economic advantage. See Dkt. 149 (Baldy Closing) at 1.

Having heard and reviewed the evidence and having considered the parties' post-trial briefs, the Court makes the following findings of fact and conclusions of law.[2]

## FINDINGS OF FACT[3]

1. This Court has subject matter jurisdiction pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.* 28 U.S.C § 1331.[4] The Court has supplemental jurisdiction over the state-law claims. 28 U.S.C. § 1367. Venue is proper under 28 U.S.C. § 1391.

---

[2] Any finding of fact deemed to be a conclusion of law is incorporated into the conclusions of law. Any conclusion of law deemed to be a finding of fact is incorporated into the findings of fact.

[3] Valentin asserted numerous facts for the first time in her post-trial closing argument brief. See, e.g., Dkt. 155 (Valentin Closing) at 9-16, 25-27. It is a "well-settled rule that it is improper in closing argument to make reference over objection to matters not in evidence." Janich Bros. v. Am. Distilling Co., 570 F.2d 848, 860 (9th Cir. 1977). This is problematic because the other side is "not afforded the opportunity to present explanatory evidence." Id. Even if the Court were to accept additional evidence after the trial concluded, these additional facts are not presented in admissible form, and Baldy has not had the opportunity to cross-examine or impeach. Therefore, the Court declines to consider any facts not presented at trial. In addition, contrary to Valentin's assertions that she was "never allowed to testify in her own defense," Valentin Closing at 23; see also id. at 35, 36, Valentin did testify and stated to the Court that she had no further testimony to give, see Dkt. 145 (Tr.) at 147:1-149:4.

[4] In its June 11, 2019 Order, Dkt. 153, the Court set out its reasoning as to why the recent Supreme Court decision in Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC, 139 S. Ct. 881 (2019) does not deprive the Court of subject matter jurisdiction over this case.

2.  Baldy has been in the business of selling crafting products for the last ten years.  She sells her products through various channels including her websites, the Home Shopping Network, Create and Craft TV, Target, JOANN fabrics, and other craft distributors.  She specializes in happy, fantasy, big-eyed art under the brand name Mybesties.  Tr. at 9:7-10:12.

3.  Valentin has been an artist since she was six years old, creating murals, holiday windows, portraits, and other paintings.  She also creates big-eyed art and has licensed her art to Nabisco, Zephyrhills, Budweiser, and Sonoma Wines, among others.  Tr. at 147:3-15.

4.  Baldy established the Fairy Society where she developed relationships with other fantasy, big-eyed artists, including Valentin, and licensed their art to sell online.  Tr. at 13:9-14:12.

5.  Baldy and Valentin entered into a license agreement on or around July 22, 2010 for Baldy to incorporate Valentin's art on Baldy's website.  Valentin Ex. 4.

6.  In or around 2012, Valentin, through Thomas Schmidt, requested an accounting of Valentin's royalties.  When Baldy did not comply within 48 hours, Valentin terminated the contract.  Tr. at 19:11-21:7, 113:18-23.

7.  At some point thereafter, Valentin established an online blog and store under the name "Lacy Sunshine."  Tr. at 38:18-24.

## A.   Works and Copyrights

8.  Baldy created the following list of original works:

     a. Lil Ragamuffins, created in 2011, Tr. at 55:10-56:11;

b. Daisy Do All, first published on December 31, 2012 on Baldy's personal Facebook page, Tr. at 24:5-26:21;

c. Fishing Girl, first published on March 25, 2013, Tr. at 32:16-33:14;

d. Wild Child, first published on June 12, 2013 on Baldy's personal Facebook page, Tr. at 56:15-57:17;

e. Posie Pocket, first published on October 1, 2013, Tr. at 67:12-18;

f. Betsy Beanie and Flossie (Betsy), first published on November 9, 2013 on Baldy's professional Facebook page, Tr. at 33:19-24;

g. Little Violet, first created on February 2, 2014 and first published by Baldy about six months later, Tr. at 35:11-36:2;

h. Josephina, first published on July 12, 2014, Tr. at 55:12-17;

i. Daisy Fairy Bestie Little Footsie Fairy (Daisy Fairy), first published on October 12, 2014, Tr. at 55:1-7;

j. Bunny Basket, first published on March 11, 2016 on a "Community" Facebook page for Baldy, Tr. at 53:19-54:25.

9. Baldy's Facebook pages are available to the public, and have been available to the public since the first image was published. See Tr. at 12:11-25, 25:21-26:4, 32:8-12, 34:13-24, 54:23-25, 57:9-13.

10. Baldy did not license these works to Valentin. See Tr. at 48:11-14, 57:14-17, 68:14-17, 80:10-12.

11.  Valentin created the following works:

    a.  Josie Ladybug Fairy, first published on January 20, 2011 on Valentin's Facebook page, Valentin Ex. 3 at 12;

    b.  Molly Fishing, first published on April 17, 2012 on Valentin's Facebook page, Valentin Ex. 3 at 8;

    c.  Various versions of Rory, first published on October 27, 2013, November 12, 2013, January 17, 2017, and May 9, 2017 on Valentin's blog and store, Tr. at 51:24-52:23, 59:22-61:6, 62:7-20, 66:22-67:3;

    d.  Matilda Button Boo, first published on January 28, 2014, Tr. at 67:20-23, 68:19-69:3;

    e.  Mayde,[5] first published on March 2, 2014 on Valentin's blog, Tr. at 39:3-24, 144:22-145:16;

    f.  Victorian Lizbeth, first published on May 3, 2014, on Valentin's Facebook page, Valentin Ex. 3 at 23;

    g.  "Flower Fairy,"[6] first published on November 12, 2014, Tr. at 66:1-17.

12.  Baldy has obtained copyright registrations for the following characters, among others: Daisy Do All,[7]  Fishing Girl,

---

[5] Valentin discussed, but never sought to admit, evidence that she received copyright registration for her Mayde character on March 6, 2014.

[6] There was no evidence as to the name of this character.

[7] The Court notes that this copyright does not appear in Exhibit B to Baldy's Third Party Complaint.  Dkt. 26-2.  However, allegations as to this work were set forth in the Third Party Complaint, Compl. ¶ 26, and Valentin did not object to evidence regarding this work, see Valentin Closing at 8.

Betsy, Little Violet, Bunny Basket,[8] Daisy Fairy, Josephina, Lil Ragamuffin, Wild Child, and Posie Pockets. See Baldy Exs. 5A-J.

13. All but one of these copyrights were registered as of April 26, 2017. Baldy Exs. 5A-G, 5I-J. The Lil Ragamuffin characters were registered on February 21, 2013. Baldy Ex. 5H.

## B. Comparison of Baldy and Valentin Works

14. Baldy's Daisy Do All was published nearly a year and a half before Valentin's Mayde. Both characters have similar polka-dotted hair bows, curly hair, similar hand and feet poses, and a similar pinafore skirt. Because of the similarities, members of the public asked Baldy whether Mayde was created by Baldy. Tr. at 48:15-49:11, 96:20-98:23, 134:12-18; Baldy Ex. 7A.

15. Baldy's Fishing Girl was published more than six months prior to Valentin's 2013 Rory characters.[9] Both have sideways hats with flowers on the left side and baggy jeans. However, Fishing Girl has her hair in a ponytail, while 2013 Rory has her hair in pigtails, and Fishing Girl is facing forward with both eyes showing, while Rory is turned to the side and one of her eyes is covered by her hair. Also, while

---

[8] The Court notes that this copyright does not appear in Exhibit B to Baldy's Third Party Complaint. Dkt. 26-2.

[9] In closing, Baldy argued that Valentin's 2013 Rory character infringed on five of Baldy's characters: Wild Child, Little Fishing Girl, Betsy Beanie and Flossie, Little Violet, and Ragamuffins. Baldy Closing at 4-5. However, Baldy only presented evidence as to the similarity to Fishing Girl and Betsy Beanie and Flossie, and not the other characters. Moreover, Little Violet was created *after* 2013 Rory.

Fishing Girl appears happy, 2013 Rory does not.  Tr. at 53:5-17; Baldy Ex. 7B.

16. Baldy's Betsy was published a few days before Valentin's November 2013 Rory.  Both have similar foot positions and are wearing overalls with one strap undone and were published only four days apart. However, the November 2013 Rory has one eye covered by her hair and the other eye is "saggy" and not "sweet." Tr. at 59:1-20; Baldy Ex. 7C.

17. Baldy's Josephina was published two-and-a-half years prior to Valentin's January 2017 Rory.  Both characters have similar top hats and hair tied to the side with a flower, covering one eye.  Baldy Ex. 7D.

18. Baldy's Daisy Fairy was published a few weeks before Valentin's "Little Fairy."  Both characters have bows in their hair, both have wings, and both are sitting on top of a flower. Baldy Ex. 7F.  A fairy sitting on a flower is generic.  Tr. at 105:10-17.

19. Baldy's Posie Pocket was published a few months before Valentin's Matilda Button Boo.  Both characters have a similar floppy hat, wear their hair in pig tails with bows, have their toes turned in, and have ruffles at the tops of their socks.  Tr. at 67:24-68:5, 106:2-23; Baldy Ex. 7H.

## C.   Defamation and Intentional Interference

20. Baldy testified that Valentin (or those on her behalf) contacted Baldy's business partners and told them that Baldy was infringing on Valentin's work and threatened to sue, and as a result those partners ceased working with her. <u>See, e.g.</u>, Tr. at 45:19-47:20, 82:6-84:2, 86:4-24.

21. As to Create and Craft TV, Baldy testified that someone at Create and Craft TV told her that "they were contacted by what they told [her] was Ms. Valentin's camp, or her design team, or her" and that that person said that Baldy "was infringing on her artwork." Tr. at 46:5-12.

22. As to the Bradford Exchange, Baldy testified that "Missy . . . who was one of the developers [at the Bradford Exchange]" contacted Baldy "and said: Who is the woman that Jasmine Becket Griffith had problems with and had to threaten to sue for copyright infringement? And I said: That is Heather Valentin. And she said: That's the woman that has contacted Kate, our lawyer. . . . I immediately called Kate, spoke to her, and explained to her that, no, in fact these images were not Ms. Valentin's images. This was not her work. I drew them. They are mine." Tr. at 83:3-15. Baldy did not remember when the Bradford Exchange contacted her. Tr. at 137:6-10.

23. With respect to MarkerPOP, Baldy testified that MarkerPOP sent her an email from Valentin where she "threatened to sue [MarkerPOP] if they did not remove [Baldy's] work immediately." Tr. at 86:6-12.

24. There was no testimony about these statements from Valentin or any of the alleged recipients of this information, nor were there exhibits admitted at trial containing the statements.

25. Further, Baldy testified that she attributed the termination of certain business relationships to Valentin's contact with those entities. See Tr. at 47:11-17, 83:23-84:2, 86:4-24. There was no testimony or evidence from those entities setting forth the reasons they terminated their relationships with Baldy.

## D. Unfair Competition

26. Baldy has created and sold coloring books on Amazon since 2016. Tr. at 72:25-76:2.

27. Baldy submitted evidence that if a customer were to search Amazon for "Sherri Baldy," both her works and Valentin's works would appear in the search result. Tr. at 78:8, Baldy Ex. 9B-D.

28. Baldy has not submitted evidence that this occurred because Valentin herself was improperly "meta-tagging" her products with Baldy related meta-tags (e.g. "Mybesties," "Sherri Ann," or "Sherri Ann Baldy"). See Tr. at 77:3-10.


# CONCLUSIONS OF LAW

## E. Burden of Proof

29. Baldy was required to establish, by a preponderance of the evidence, every element of her claims for copyright infringement, defamation, intentional interference with prospective economic advantage, and unfair competition. See In re Exxon Valdez, 270 F.3d 1215, 1232 (9th Cir. 2001) ("The standard of proof generally applied in federal civil cases is preponderance of evidence").

## F. Copyright Infringement

30. "A plaintiff bringing a claim for copyright infringement must demonstrate '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" Funky Films, Inc. v. Time Warner Entm't, 462 F.3d 1072, 1076 (9th Cir. 2006) (quoting Feist Pubs., Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)). "[T]he

second element has two distinct components: 'copying' and 'unlawful appropriation.'" Rentmeester v. Nike, Inc., 883 F.3d 1111, 1117 (9th Cir. 2018), cert. denied, 139 S. Ct. 1375 (2019).

### 1. Copyright Ownership

31. "An author gains 'exclusive rights' in her work immediately upon the work's creation, including rights of reproduction, distribution, and display." Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC, 139 S. Ct. 881, 887 (2019). "Before pursuing an infringement claim in court, however, a copyright claimant generally must comply with § 411(a)'s requirement that 'registration of the copyright claim has been made.'" Id. (quoting 17 U.S.C.A. § 411(a)).[10] "In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). Here, each of the registration certificates was made within five years of Baldy's first publication. Therefore, she has established ownership of valid copyrights.

---

[10] At the time the lawsuit was filed, the law in the Ninth Circuit required only "receipt by the Copyright Office of a complete application" to "satisf[y] the registration requirement." Cosmetic Ideas, Inc. v. IAC/Interactivecorp., 606 F.3d 612, 621 (9th Cir. 2010). However, a few weeks before trial, the Supreme Court held in Fourth Estate that registration did not occur until the Copyright Office grants registration. 139 S. Ct. at 888. The Court found that in the circumstances of this particular case, the change in law did not warrant dismissal of the copyright claims. See Dkt. 153.

### 2. Copying

32. "By establishing reasonable access and substantial similarity, a copyright plaintiff creates a presumption of copying. The burden shifts to the defendant to rebut that presumption through proof of independent creation." Three Boys Music Corp. v. Bolton, 212 F.3d 477, 486 (9th Cir. 2000).

33. "To prove access, a plaintiff must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work." Art Attacks Ink, LLC v. MGA Entm't Inc., 581 F.3d 1138, 1143 (9th Cir. 2009). "Circumstantial evidence of reasonable access is proven in one of two ways: (1) a particular chain of events is established between the plaintiff's work and the defendant's access to that work (such as through dealings with a publisher or record company), or (2) the plaintiff's work has been widely disseminated." Three Boys Music, 212 F.3d at 482. "The evidence required to show widespread dissemination will vary from case to case." L.A. Printex Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 847 (9th Cir. 2012), as amended on denial of reh'g and reh'g en banc (June 13, 2012).

34. Baldy's Facebook pages, where she published her original works, were accessible to the public at all relevant times. Valentin and Baldy appeared to be fierce competitors in a niche industry, establishing that there was a reasonable possibility that Valentin either visited Baldy's Facebook page and viewed these images, or was otherwise shown these images by customers or others in the industry. Further, there was evidence that Baldy's works were widely disseminated among the crafting/scrapbooking industry. Id. at 848 (holding that reasonable possibility of access can be

established if the work was widely disseminated among a specific industry). Therefore, Baldy has established access.

35. Substantial similarity is established through the two-part extrinsic/intrinsic test. Three Boys Music, 212 F.3d at 485. "At the initial 'extrinsic' stage, [courts] examine the similarities between the copyrighted and challenged works and then determine whether the similar elements are protectable or unprotectable." Mattel, Inc. v. MGA Entm't, Inc., 616 F.3d 904, 913 (9th Cir. 2010), as amended on denial of reh'g (Oct. 21, 2010). "The intrinsic test is subjective and asks 'whether the ordinary, reasonable person would find the total concept and feel of the works to be substantially similar.'" Three Boys Music, 212 F.3d at 485 (quoting Pasillas v. McDonald's Corp., 927 F.2d 440, 442 (9th Cir. 1991)).

36. The depiction of little girls with big heads and eyes is an unprotectable idea. See Mattel, 616 F.3d at 915 ("The concept of depicting a young, fashion-forward female with exaggerated features, including an oversized head and feet, is therefore unoriginal as well as an unprotectable idea."). However, particularized expression of the characters' hair style, clothing and accessories, and facial expression can be protectable if the "selection, coordination, and arrangement" of the elements are original. See L.A. Printex, 676 F.3d at 849. In other words, where wavy hair alone may not be protectable, wavy hair combined with a polka dotted dress, stilettos, and a smiling child smelling a flower may form protectible expression. See Malibu Textiles, Inc. v. Label Lane Int'l, Inc., 922 F.3d 946, 952 (9th Cir. 2019) ("A combination of unprotectable elements is eligible for copyright protection 'if those elements are numerous enough and their selection and arrangement original enough that

their combination constitutes an original work of authorship.'" (quoting <u>Satava v. Lowry</u>, 323 F.3d 805, 811 (9th Cir. 2003))). In applying the extrinsic test to art works, "a court looks to the similarity of the objective details in appearance." <u>Cavalier v. Random House, Inc.</u>, 297 F.3d 815, 826 (9th Cir. 2002). "[T]he subject matter, shapes, colors, materials, and arrangement of the representations may be considered in determining objective similarity in appearance." <u>Id.</u>

37. Under the extrinsic test, the Court declines to consider the sex or age of the characters in the drawings, their resemblance to humans, the mere fact of exaggerated features, or the black outline and lack of colors.

38. Daisy Do All and the Mayde Spring Cleaning Dust Bunny are substantially similar. As described above, both depict maid characters with big eyes and curly hair tied up in a polka-dotted ribbon with a bow. Both are wearing short-sleeved dresses over capri-length pants. The right foot is titled inwards in both and both characters are holding a duster in the left hand, with the right hand flexed on the side of the body. Considering the selection and arrangement of these elements in combination, the works are substantially similar under the extrinsic test. Under the intrinsic test, an ordinary, reasonable person would find the total concept and feel of the works to be substantially similar. As further evidence of this fact, Baldy testified that some of her customers asked Baldy whether the Mayde character was created by her.

39. Having established the presumption of copying, the burden shifted to Valentin to rebut that presumption through proof of independent creation. The only such evidence is Valentin's general and conclusory testimony that she has not

copied Baldy.  Tr. at 147:23.[11]  This is insufficient to
overcome the presumption of copying.

40. The 2013 Rory characters are not substantially similar to
Baldy's characters, including the Little Fishing Girl or
Betsy. As noted above, and as Baldy testified, the 2013
Rorys have saggy eyes and do not have the sweet, happy feel
of Baldy's characters.  Further, the hats are different, the
hair styles are different, and the 2013 Rorys have one eye
covered by their hair while Baldy's characters have both
eyes visible.  While all of the characters are wearing baggy
pants and have their toes pointing inward, and both 2013
Rory and Betsy have a similar strap on their shirt, there are
significant elements that are different between the two
works.

41. Josephina and the January 2017 Rory are not substantially
similar.  Although both have a top hat, the January 2017
Rory hat is a common leprechaun hat and does not have the
same "feel" as Josephina's hat.  Also the body positions are
different: Josephina's hands are behind her back while both
of January 2017 Rory's hands are outstretched and holding
items.  Further, Josephina's dress is strapless, puffy, and
full-length, and January 2017 Rory's dress is long-sleeved,
knee-length, and less puffy.  January 2017 Rory also has her

---

[11] Valentin asserts additional facts supportive of independent creation in her
closing argument, Valentin Closing at 16, but that evidence cannot be
considered, as it was not presented or admitted at trial.  See Janich Bros, 570
F.2d at 860.  Similarly, Valentin's unsworn statements during her cross-
examination of Baldy that her Mayde character was "hand-drawn by
[Valentin] for a client" at an art show "on October 27, 2012," Tr. at 120:16-23,
is not evidence.  Even if it were, standing alone, it would not be sufficient to
meet Valentin's burden (which shifted to her on the presumption of access) of
showing independent creation.

ankles crossed and is wearing flats, while Josephina's legs are not crossed and she is wearing sneakers without shoelaces.

42. Nor are Josephina and the May 2017 Rory substantially similar. Beyond the hair being clasped to one side, covering one eye and both having a hat, the clothes are very different, and the eyes, eyelashes, and lips of May 2017 Rory are much smaller and less exaggerated than Josephina's.

43. Baldy's Daisy Fairy and Valentin's "Little Fairy" are not substantially similar. Although both have bows in their hair, both have wings, and both are sitting on top of a flower (which is a generic idea), there are many differences. The wings are very different, and Valentin's Fairy has her hair down and is wearing a frilly skirt with shoes on. Daisy Fairy appears to be wearing leggings and is barefoot. Further, Daisy Fairy has more exaggerated features while Valentin's Fairy has more realistic features.

44. Baldy's Posie Pocket and Valentin's Matilda Button Boo are not substantially similar. Both have a similar floppy hat, wear their hair in pig tails with bows, have their toes turned in, and have ruffles at the tops of their socks. However, Posie Pocket has a frilly dress with a shawl, while Matilda Button Boo is wearing overalls and a sweater. Further, Matilda Button Boo's head and feet are much larger compared to her body, and she has no neck. Matilda Button Boo is sitting with her hands on her knees while Posie Pocket is standing with her hands behind her back.

45. The 2013 Rorys are not substantially similar to Little Violet,[12] Bunny Basket, Lil Ragamuffins, or Wild Child. Although Bunny Basket and Wild Child, like 2013 Rorys, have one eye covered with their hair, there are significant elements that are different between the works. Bunny Basket has one eye closed and is hiding inside of a basket. Wild Child has her hair down, is not wearing a hat, and is wearing a tutu skirt. She also has her hands behind her back and is standing on one foot. Similarly, the Lil Ragamuffins have curly hair with flowers in them and are wearing ruffle skirts with frilly socks.

46. Baldy had carried her burden of proof as to copyright infringement for the Daisy Do All character. Baldy has failed to carry her burden of proof as to her other characters.

### 3.    Damages

47. "[T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action." 17 U.S.C.A. § 504(c)(1). In her closing statement, Baldy elected to seek statutory damages. Baldy Closing at 8. Baldy presented no evidence at trial of her actual damages for the copyright infringement claim.

48. "[N]o award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for . . . any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after

---

[12] The publication of the 2013 Rory in fact pre-dates the publication of Little Violet.

the first publication of the work." 17 U.S.C. § 412. Each alleged infringement of Baldy's copyrights occurred after publication, but before the effective date of registration, and registration was not made within three months of first publication. Therefore, Baldy is not entitled to statutory damages or attorney's fees and Baldy has not proven any actual damages by a preponderance of the evidence.

## G. Defamation

49. "The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." Jackson v. Mayweather, 10 Cal. App. 5th 1240, 1259 (2017) (quoting John Doe 2 v. Superior Court, 1 Cal. App. 5th 1300, 1312 (2016)), as modified (Apr. 19, 2017), review denied (June 28, 2017). "Libel is a form of defamation effected in writing." John Doe 2, 1 Cal. App. 5th at 1312. The writing must be "false and unprivileged" and "expose[] [plaintiff] to hatred, contempt, ridicule, or obloquy, or . . . cause[] him to be shunned or avoided, or . . . ha[ve] a tendency to injure him in his occupation." Cal. Civ. Code § 45.

50. Baldy's testimony that on an unknown date, an unidentified person at Create and Craft TV told Baldy that someone in "Ms. Valentin's camp, or her design team, or her" told the unidentified person at Create and Craft TV that Baldy was infringing on Valentin's artwork, absent additional evidence, is insufficient for Baldy to meet her burden. She has not established that Valentin is responsible for any alleged statement, to whom the statement was made, when it was made, or that the statement was false. Although Baldy established at trial that Valentin infringed one of Baldy's copyrights, she did not provide evidence of the inverse—that she never infringed Valentin's artwork.

51. Baldy did not provide any evidence of what Valentin purportedly said to the Bradford Exchange's attorney, but only what Baldy told the Bradford Exchange after being informed that Valentin had contacted the attorney. To the extent her testimony implies that Valentin claimed that Baldy's images were copies of Valentin's, Baldy has not shown by a preponderance of the evidence that she never copied Valentin's artwork.

52. As to MarkerPop, Baldy testified only that Valentin threatened to sue them if they did not remove Baldy's work. This is not a statement about Baldy and therefore cannot be the basis of a defamation claim. [13]

53. Baldy has failed to establish that a specific false and defamatory publication was made by Valentin. Therefore, Baldy cannot prevail on this claim.

## H. Interference with Prospective Economic Advantage

54. The elements of the tort of intentional interference with prospective economic advantage are: "(1) an economic relationship between plaintiff and a third party, with the probability of future economic benefit to the plaintiff; (2) defendant's knowledge of the relationship; (3) an intentional act by the defendant, designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's wrongful act, including an intentional act by the defendant that is designed to disrupt the relationship between the

---

[13] Baldy relies on a pre-trial statement and an exhibit that was not submitted into evidence at trial to show that Valentin made specific statements to specific vendors. Dkt. 156 (Baldy Rebuttal) at 5. However, Baldy's post-trial evidence cannot be considered. See Janich Bros, 570 F.2d at 860.

plaintiff and a third party." <u>Edwards v. Arthur Andersen LLP</u>, 44 Cal. 4th 937, 944 (2008). "The plaintiff must also prove that the interference was wrongful, independent of its interfering character." <u>Id.</u> (citing <u>Della Penna v. Toyota Motor Sales, U.S.A., Inc.</u>, 11 Cal. 4th 376, 393 (1995)).

55. The only wrongful conduct independent of the alleged interference is Valentin's purported defamation of Baldy. Because the defamation claim fails, Baldy cannot prevail on her claim for intentional interference with prospective economic advantage.

56. Even had Baldy established her defamation claim, Baldy has not established that the termination of her relationships with those business partners was proximately caused by Valentin's purportedly defamatory statements. Her conclusory testimony that this was the case, without additional supporting evidence, is insufficient to meet her burden.

## I. Unfair Competition

57. California's unfair competition law (UCL) "does not proscribe specific practices," but rather "defines 'unfair competition' to include 'any unlawful, unfair or fraudulent business act or practice.'" <u>Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.</u>, 20 Cal. 4th 163, 180 (1999) (quoting Cal. Bus. & Prof. Code § 17200). "Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition." <u>Id.</u> (quoting <u>Podolsky v. First Healthcare Corp.</u>, 50 Cal. App. 4th 632, 647 (1996), <u>as modified</u> (Nov. 5, 1996), <u>as modified</u> (Nov. 20, 1996)).

58. "A 'violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong.'" <u>Graham v.</u>

Bank of Am., N.A., 226 Cal. App. 4th 594, 610 (2014) (quoting Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1554 (2007)). A competitor's actions are "unfair" if the conduct is "tethered to some legislatively declared policy," there is "proof of some actual or threatened impact on competition," the "conduct . . . threatens an incipient violation or that it "threatens an incipient violation of an antitrust law, or violates the policy or spirit of" an antitrust or similar law. Id. at 612 (quoting Cel-Tech, 20 Cal. 4th at 187). A business practice is fraudulent if "members of the public are 'likely to be deceived.'" Id. at 613 (quoting Buller v. Sutter Health, 160 Cal. App. 4th 981, 986 (2008)).

59. Baldy has not established by a preponderance of the evidence that Valentin herself committed the challenged business acts. Baldy's conclusory testimony that Valentin "started meta-tagging [her] work" and "would tag [her] particular 'Sherri Baldy' or 'Mybesties,'" Tr. at 76:13-23, without more, is insufficient.

60. Further, Baldy's testimony that "[i]f you search my name 'Sherri Baldy,' the only thing that should come up would be Sherri Baldy products" and that "[n]o one else would come up unless they are considered a sponsor," Tr. at 75:4-18, without more, is insufficient to establish how meta-tagging works on Amazon, and therefore that someone with control over Valentin's coloring books on Amazon committed an unlawful, unfair, or fraudulent act.

## CONCLUSION

Judgment shall be entered in favor of Baldy and against Valentin on Baldy's copyright infringement claim for her Daisy Do All character. However, Baldy is not entitled to statutory

damages and has not proved by a preponderance of the evidence that she is entitled to actual damages.

Judgment shall be entered in favor of Valentin and against Baldy on Baldy's remaining copyright infringement claims, and her claims for defamation, intentional interference with prospective economic advantage, and unfair competition.

The Court finds that Valentin is the prevailing party.

IT IS SO ORDERED.

Date: 10/19/2019

_____
Dale S. Fischer
United States District Judge